BLAHNIK, Respondent, vs. BARTA and others, Appellants.

*November 9—December 4, 1906.*

*Fraudulent conveyances: Findings: Evidence.*

In an action to set aside a conveyance of lands as in fraud of creditors, the findings of the trial court, that such conveyance was made without consideration upon a secret trust to hold the title for the grantor's benefit and with intent to hinder and delay the plaintiff in the collection of her claim, are *held* supported by the evidence.

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent the cause was submitted on the brief of *Geo. W. Wing* and *O. H. Bruemmer.*

WINSLOW, J.  This is an action in equity brought by the plaintiff as a judgment creditor of the defendant *Frank Barta* against said *Frank Barta* and his son, the defendant *Joseph Barta,* and their respective wives to set aside a conveyance of real and personal property made by *Frank* to *Joseph* March 19, 1902, on the ground that it was made with intent to hinder and defraud the plaintiff and prevent her from enforcing and collecting a claim for damages which she then had against *Frank.*  The conveyance in question covered eighty acres of land, forty of which constituted the homestead of the defendant *Frank,* and also covered all the personal property on the farm, being the entire property of said defendant.  The court found that the conveyance was made without consideration upon a secret trust that *Joseph* should hold the title for his father's benefit and with intent to hinder and delay the plaintiff in the collection of her claim, and entered judgment setting aside the conveyance as to the forty acres of land not included in the homestead as

well as the nonexempt personal property, and the defendants:
appeal.

It appears that on or about December 16, 1901, and upon·
one or more occasions thereafter the defendant *Frank,* a
farmer about forty-nine years of age, slandered the plaintiff
in a public place by charging her with having murdered her·
father; that the plaintiff commenced an action to recover·
damages for such slander June 17, 1902, and obtained judg-
ment for damages and costs therein aggregating more than.
$700 March 19, 1905; that the deed in question was executed
by *Frank* to his son *Joseph* on March 19, 1902, and recorded
on June 18th of the same year; that *Frank* then had six.
children ranging from seven to twenty-four years of age, of
which *Joseph* was the eldest and was engaged in teaching.
school, and resided some four miles distant from the home·
farm; that, after the first utterance of the slander and prior·
to the execution of the deed, there was talk among the people
of the neighborhood to the effect that the plaintiff was likely·
to sue the defendant *Frank* for said slander; that several
years previously the plaintiff had sued *Frank* for a similar·
alleged slander, which suit was subsequently discontinued;
that, after the conveyance was made, *Frank* continued to live·
on the farm with his family and manage it substantially as:
before; that in the spring of 1902, after the term of school
closed, *Joseph* and his wife came to live on the farm and re-
mained there with the parents for twenty-one months, during·
which time *Joseph* taught school and worked on the farm.
during vacations; that in December, 1904, he removed to·
Algoma and became a rural mail carrier, and has not since
lived on the farm. The value of the farm appears to have·
been about $7,000, and of the personal property something
over $500. The consideration for the execution of the deed
as claimed by defendants consisted of (1) the assumption by·
*Joseph* of mortgages on the farm amounting to $1,100, and
of an unsecured note of *Frank* for $300, also the discharge:

of an alleged indebtedness of *Frank* to *Joseph* of $2,100;
(2) an agreement by *Joseph* to pay to each of his two broth-
ers $1,000, and to each of his three sisters $500, at majority;
and (3) an agreement that the parents should be supported
on the farm for life if they chose to remain there, and if they·
did not that they should receive $2,000 from *Joseph*.   None
of these agreements were expressed in the deed, which was a
simple warranty deed, nor were they expressed in any writ-
ing.   The court found that these agreements were not in
fact made, and that the actual indebtedness from *Frank* to
*Joseph* was but $360.

There were many other facts appearing in the evidence
tending to throw light on this very remarkable transaction
by which a comparatively young man with a large family
stripped himself of his property without any apparent or
adequate reason and placed the title in a son, who neither
expected to operate it nor did in fact operate it.   There was·
no direct evidence that *Joseph* knew of his father's fraudu-
lent purpose, but there are many circumstances which per-
suasively tend to show that he must have known it.   Careful·
reading of the evidence convinces us that the trial judge was·
right in his conclusions.   Much time and space might be
spent in reviewing the evidence, but it is not perceived how
such a course would be useful.

*By the Court.*—Judgment affirmed.